UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Case No. 08-1363 (RJL) |
| UNITED STATES DEPARTMENT OF STATE, *et al.,*[1] | ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| TRANSCANADA KEYSTONE PIPELINE, LP, | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

MEMORANDUM OPINION
(September 29, 2009) [#25 and 26]

The Natural Resources Defense Council and certain local affiliates (collectively,

"NRDC") bring this action seeking declaratory and injunctive relief against the United

States Department of State and various officers acting in their official capacity

_____

[1] Among the original named defendants in this suit were Condoleezza Rice, then Secretary of State, and Reuben Jeffrey, III, Under Secretary of State for Economic, Energy, and Agricultural Affairs. Pursuant to Federal Rule of Civil Procedure 25(d), if a public officer named as a party to an action in her official capacity ceases to hold office, the court will automatically substitute that officer's successor. Accordingly, the Court substitutes Hillary Clinton for Condoleezza Rice and Robert Hormats for Reuben Jeffrey.

(collectively, "State Department") on the ground that the State Department violated the

National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370f, by issuing a

presidential "permit" to defendant-intervenor TransCanada Keystone Pipeline, LP

("Keystone") for a cross-border oil pipeline between the United States and Canada based

on an inadequate assessment of the environmental impacts.[2]  The State Department and

Keystone (collectively, "defendants") move to dismiss the action for lack of jurisdiction

under Rule 12(b)(1), or for failure to state a claim under Rule 12(b)(6), because no cause

of action exists under NEPA or any other federal statute to challenge the State

Department's actions in this case.  For the following reasons, the Court agrees with the

defendants and therefore GRANTS their respective Motions to Dismiss.

## BACKGROUND

Executive Order 13,337 delegates to the State Department the President's authority

to issue permits for the construction of an oil pipeline across the border of the United

States if it finds that issuance of the permit to the applicant "would serve the national

interest." Exec. Order No. 13,337, §1(g), 69 Fed. Reg. 25,299 (Apr. 30, 2004).  Before

issuing the permit, the State Department must consult with various departments and

agencies specified in the Order.  *Id.* §1(b)(ii).  If any of those departments or agencies

disagrees with the State Department's proposed decision, then the State Department must

---

[2] "Permit" as used here is not a standardized form issued pursuant to a formalized regulatory process. Rather, it is the written imprimatur of the President issued through the State Department authorizing the applicant to proceed with the cross-border project.

refer the permit application to the President "for consideration and a final decision." *Id.*

§1(i). Otherwise, the State Department makes the final decision.

Over three years ago, Keystone filed an application with the State Department for

a presidential permit to build an oil pipeline across the United States–Canadian border.

(Amend. Comp. [#21] at ¶ 41). As part of its review process, the State Department

released a draft Environmental Impact Statement ("EIS") and then a final EIS. (*Id.* at ¶¶

48, 51). Not long after issuing the final EIS, the State Department released a Record of

Decision ("ROD") announcing its intent to issue a presidential permit for the pipeline

project based on its determination that the permit would serve the national interest. (*Id.* at

¶ 58). The permit issued shortly thereafter. (*Id.* at ¶ 59).

The NRDC brought this action against the State Department, which Keystone

joined as an intervenor-defendant, on the ground that the State Department violated

NEPA by issuing the presidential permit to Keystone based on a deficient EIS. (*Id.* at ¶

71). NEPA directs that "all agencies of the Federal Government shall . . . include in every

recommendation or report on proposals for legislation and other major Federal actions

significantly affecting the quality of the human environment, a detailed statement" on

environmental impacts. 42 U.S.C. § 4332(2)(C). The NRDC claims that the State

Department's final EIS did not comply with NEPA and its implementing regulations for

numerous reasons, the details of which are not relevant now. (Amend. Comp. [#21] at ¶¶

65-71). As a result, the NRDC seeks a declaration that the State Department's failure to

3

prepare an adequate EIS violated NEPA and that the State Department's decision to issue

the presidential permit based on that EIS violated the Administrative Procedure Act

("APA").  (*Id.* at 19).  The NRDC also seeks an injunction directing the State Department

to revoke the permit and to require that Keystone remove the portion of the pipeline

subject to the permit and that it cease any further construction or activity until the State

Department complies with NEPA and the APA.  (*Id.*).

## ANALYSIS

Defendants move to dismiss the NRDC's Amended Complaint on the ground that

no legal basis exists to challenge State Department decisions on behalf of the President to

issue presidential permits under Executive Order 13,337.  Defendants assert that the

NRDC cannot point to any statutory authority that creates a cause of action by which this

Court may review the State Department's conduct in this case.  Defendants further argue

that a private right of action is expressly foreclosed by the Executive Order itself.  *See*

Exec. Order No. 13,337, §6, 69 Fed. Reg. at 25,299.

Although defendants couch their motion primarily as a jurisdictional challenge

under Rule 12(b)(1), the more appropriate procedural vehicle is Rule 12(b)(6).  The

NRDC claims a violation of NEPA and the APA, both of which raise a federal question

covered by 28 U.S.C. § 1331.[3]  The crux of defendants' various arguments is not whether

---

[3] This statute confers on federal district courts original subject matter jurisdiction
over "civil actions arising under the Constitution, laws, or treaties of the United States."

the NRDC has presented federal claims, but whether those claims are enforceable against

the State Department when it is acting on behalf of the President pursuant to Executive

Order 13,337.[4] Whether there is a cause of action is not a jurisdictional question; rather,

"the court must assume jurisdiction before deciding whether a cause of action exists."

*John Doe v. Metro. Police Dep't of D.C.*, 445 F.3d 460, 466 (D.C. Cir. 2006); *see also*

*Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726,

731 (D.C. Cir. 2003) (stating that, where there is no cause of action under the APA,

dismissal is properly invoked under Rule 12(b)(6), not under Rule 12(b)(1)).

---

[4] The State Department raises only one truly jurisdictional issue. It contends that the NRDC lacks Article III standing because its claims are not redressable. This argument, however, is unavailing. The redressability requirement is satisfied if the plaintiff can show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted). The alleged injury in this case is a procedural one—the State Department's failure to comply with NEPA before issuing a presidential permit. A party that has been accorded a procedural right to protect a concrete interest "can assert that right without meeting all the normal standards for redressability and immediacy." *Id.* at 573 n.7. Courts have routinely upheld standing in NEPA lawsuits, knowing that a favorable decision may not ultimately change the outcome. *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008). "The idea behind NEPA is that if the agency's eyes are open to the environmental consequences of its actions and if it considers options that entail less environmental damage, it may be persuaded to alter what it proposed." *Id.* The State Department argues that this case is different because the President, not the agency, is the ultimate decision-maker and can revoke the Executive Order and issue a permit regardless of what this Court decides. The State Department's argument goes too far. Such an argument would defeat standing in virtually any administrative case because agencies always act pursuant to delegated authority, whether from Congress or from the President, that can be subsequently withdrawn. That an agency's delegated authority can be revoked is too speculative to defeat standing on redressability grounds.

Accordingly, the Court will treat defendant's motion as one for dismissal under Rule 12(b)(6) for failure to state a claim. In doing so, the Court accepts the NRDC's factual allegations as true and draws all reasonable inferences in the NRDC's favor. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Dismissal is proper if the NRDC is unable to prove any set of facts in support of a claim that would entitle it to relief. *Id.*

The NRDC argues, as it must, that it is entitled to relief under the APA. It is well-established that NEPA does not create a private right of action. *Pub. Citizen v. U.S. Trade Representative*, 5 F.3d 549, 551 (D.C. Cir. 1993). Nor does Executive Order 13,337 affirmatively create a cause of action to enforce its terms. Indeed, it does the opposite by expressly foreswearing that it creates any "right, benefit, or trust responsibility, substantive or procedural, enforceable at law or in equity." Exec. Order No. 13,337, §6, 69 Fed. Reg. at 25,299. As a result, to enforce NEPA in this case, the NRDC must rely on the general provisions of the APA, which provide for judicial review in cases where a party suffers "legal wrong because of agency action" or is "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Agency action is not reviewable, however, unless it is final, *id.* § 704, and agency action is not final unless it satisfies two conditions: "First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"

6

*Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citation omitted).  Given these provisions, the NRDC's argument is rather straightforward.  The NRDC and its members contend that they are aggrieved by the State Department's decision to issue a presidential permit to Keystone based on an EIS that does not comply with NEPA.  This agency action is final because it took effect in accordance with the Executive Order without further review by the President.  No party alleges that the State Department referred, or was required to refer, Keystone's application to the President for a final decision under subsection 1(i) of the Executive Order.

The NRDC's argument thus rises or falls on the existence of an APA cause of action in this particular case.  Defendants argue that agency action pursuant to a delegation of the President's inherent constitutional authority over foreign affairs is tantamount to an action by the President himself.  I agree.  The State Department, here, is not acting pursuant to any congressional delegation of power, nor is it even acting pursuant to an Executive Order that was promulgated to carry out a particular congressional mandate.[5]  To the contrary, the State Department is acting solely on behalf of the President, and in doing so, it is exercising purely presidential prerogatives.

---

[5] According to the plain terms of Executive Order 13,337, the President issued the Order by "the authority vested in me as President by the Constitution and the laws of the United States of America, including section 301 of title 3, United States Code."  Exec. Order No. 13,337, 69 Fed. Reg. 25,299.  The only statute that the Order references is 3 U.S.C. § 301, which merely authorizes the President to delegate to agencies or executive branch officials the performance of "any function which is vested in the President by law."  Such delegations are "revocable at any time by the President in whole or in part." *Id.*

Defendants have amply documented the long history of Presidents exercising their inherent foreign affairs power to issue cross-border permits, even in the absence of any congressional authorization. (*See* State Dept. Mot. to Dismiss [#26-2] at 11-13; Keystone Mot. to Dismiss [#25] at 2-4). Because the President is not an "agency" for purposes of the APA, presidential action is not subject to judicial review under that statute. *Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992); *Dalton v. Specter*, 511 U.S. 462, 470 (1994). By the same token, because the State Department is acting for the President in issuing presidential permits pursuant to Executive Order 13,337, it too cannot be subject to judicial review under the APA.

The NRDC contends, not surprisingly, that agency action is not presidential action unless there is some requirement that the President review the agency action before it takes legal effect. The NRDC argues that this result follows from *Bennett v. Spear*, which held an agency action to be final by distinguishing *Franklin* and *Dalton* on the ground that the challenged agency actions in those cases "were purely advisory and in no way affected the legal rights of the relevant actors" without final action by the President. 520 U.S. at 178. Thus, in this case, because the President made the unwitting choice of delegating his inherent authority to issue cross-border permits, which would otherwise be unreviewable, to the State Department without reserving in all cases the right to make the final decision, State Department decisions to grant or deny presidential permits that are not reviewed by the President are now reviewable under the APA. I disagree.

8

The NRDC errs by conflating the question of whether a particular action is final with the question of whether a particular action is presidential. To the extent that it has immediate legal effect, issuance of a presidential permit, to be sure, is a final action, but that does not end the inquiry. The question that remains, and the question that this Court must now answer, is whether issuance of a presidential permit by the State Department pursuant to an executive order, which is derived from the President's inherent constitutional power and not from any congressional command, is a presidential action immune from judicial review under the APA. *Bennett* sheds no light on this question, and *Franklin* and *Dalton* do so only indirectly.

*Franklin* involved a statute, 13 U.S.C. § 141(b), that directed the Secretary of Commerce to issue a report to the President tabulating the apportionment results from the decennial census. 505 U.S. at 792. Another statute, 2 U.S.C. § 2a(a), required the President to transmit the apportionment results to Congress. *Id.* The Supreme Court held that the Secretary's report to the President was not a final agency action because it carried "no direct consequences" and served "more like a tentative recommendation than a final and binding determination." *Id.* at 798. Central to this conclusion was the Supreme Court's determination that the President performed more than a ministerial task in transmitting the final apportionment results to Congress. The Court noted that nothing in the statutory scheme "curtail[ed] the President's authority to direct the Secretary in making policy judgments" or required the President "to adhere to the policy decisions reflected in the Secretary's report." *Id.* at 799. Given the President's central role in the

9

process, the Supreme Court concluded that it could review the APA claims at issue only "if the President, not the Secretary of Commerce, is an 'agency' within the meaning of the [APA]." *Id.* at 800. "Out of respect for the separation of powers and the unique constitutional position of the President," the Court held that the President's actions are not subject to the APA's requirements. *Id.* 800-01. The Court instead "would require an express statement by Congress before assuming it intended the President's performance of his statutory duties to be reviewed for abuse of discretion." *Id.* at 801.

The Supreme Court similarly held in *Dalton* that the report of the Defense Base Closure and Realignment Commission was not a final agency action under the APA because the President retained final authority to reject or approve the report. 511 U.S. at 469-70. The Court emphasized "the importance of [the President's] role in the base closure process." *Id.* at 470. Specifically, the Court noted that "[w]ithout the President's approval, no bases are closed" and that the relevant statute "does not by its terms circumscribe the President's discretion to approve or disapprove the Commission's report." *Id.* Even though the President's discretion was curtailed in the sense that he could only reject or accept the Commission's recommendations, the Court concluded nonetheless that the determinative fact was that "the President, not the Commission, takes the final action." *Id.* (internal quotation marks and alterations omitted).

*Franklin* and *Dalton*, of course, are not directly analogous to this case. No agency action had any legal effect in either case until the President affirmatively acted. Nevertheless, the reasoning of both cases is instructive. The Supreme Court distinguished

10

reviewable agency action from unreviewable presidential action by the nature of the

President's authority over agency decisions, not by whether or how the President

exercised that authority.  Unlike ministerial or ceremonial authority, the President's

exercise of significant discretionary authority over agency decisions constitutes

presidential action, which is shielded from judicial review under the APA out of concern

for the separation of powers.  Whether the President carries out the final action himself

and the manner in which he does so are considerations that certainly bear on whether the

President's duties are ministerial or discretionary, but there is no reason to think that these

considerations alone are determinative.  *See Franklin*, 505 U.S. at 800 ("That the final act

is that of the President is important to the integrity of the process and bolsters our

conclusion that his duties are not merely ceremonial or ministerial.").  Neither *Franklin*

nor *Dalton* require, as the NRDC suggests, that the President actually make the final

decision before an action is deemed to be presidential and thus unreviewable.  The

determinative consideration is whether "the President's authority to direct the [agency] in

making policy judgments" is curtailed in any way or whether the President is "required to

adhere to the policy decisions" of the agency.  *See id.* at 799.

In this case, the President has complete, unfettered discretion over the permitting

process.  No statute curtails the President's authority to direct whether the State

Department, or any other department for that matter, issues a presidential permit.  Nor

does any statute bind the President to any State Department decision granting or denying

a permit.  The State Department acts solely at the behest of the President and in

accordance with the President's guidance as set forth in Executive Order 13,337. The NRDC makes much of the fact that the Executive Order "does not contemplate the President's involvement in the permitting process," except in those cases when a permit application is referred directly to the President for a final decision because of interagency disagreement. (NRDC Op. [#36] at 10). That the President chose to retain ultimate authority to settle any interagency dispute signals his belief that the issuance of presidential permits is ultimately a presidential action. The Executive Order's division of responsibilities is merely a device for managing the President's decision-making process. Simply stated, the State Department stands in the President's shoes by exercising the President's inherent discretionary power under the Constitution to issue cross-border permits. No permit can issue without, at the very least, the President's acquiescence, and the President's acquiescence is itself an exercise of discretion that constitutes unreviewable presidential action. Therefore, to challenge the issuance of a presidential permit, whether by the President himself or by the State Department as the President's delegee, is to challenge a presidential act, which is not reviewable under the APA. *See Tulare County v. Bush*, 185 F. Supp. 2d 18, 29 (D.D.C. 2001), *aff'd*, 306 F.3d 1138 (D.C. Cir. 2002) (dismissing a NEPA claim "because NEPA requires agency action, and the action in question is an extension of the President's action"); *see also Jensen v. Nat'l Marine Fisheries Serv.*, 512 F.2d 1189, 1191 (9th Cir. 1975) ("For the purposes of this appeal the Secretary's actions are those of the President, and therefore by the terms of the APA the approval of the regulation at issue here is not reviewable.").

To expose permitting decisions, which are unreviewable if exercised by the President himself, to judicial review under the APA just because the President assigned this power to a subordinate agency would run afoul of the separation of powers concerns that underlie the Supreme Court's decisions in *Franklin* and *Dalton*. Indeed, the separation of powers interests at stake in this case are even greater because the President and his delegee here are acting pursuant to the President's inherent foreign affairs power, not pursuant to any enabling statute. *See Mountain States Legal Found. v. Bush*, 306 F.3d 1132, 1136 (D.C. Cir. 2002) (noting that judicial review over presidential decisions that are subject to discernible statutory limitations "does not implicate separation of powers concerns to the same degree" as judicial review where the President's discretion is not limited). Unlike *Franklin* and *Dalton*, as well as other cases cited by the NRDC, there is no statutory framework in which Congress delimited certain roles for the President and the agency. *Cf., e.g., Pub. Citizen*, 5 F.3d at 551 (noting how the Trade Acts involve the President at the final stage of the process for submitting a trade agreement to Congress). Nor is this case like those in which courts have allowed APA review of actions pursuant to an executive order that was itself governed by statute and did not preclude judicial review. *Cf., e.g., City of Carmel-By-The-Sea v. U.S. Dep't of Transp.*, 123 F.3d 1142, 1166 (9th Cir. 1997) (stating that the Ninth Circuit has recognized "that under certain circumstances, Executive Orders, with specific statutory foundation, are treated as agency action and reviewed under the Administrative Procedure Act" if they "do not preclude judicial review" and "there is 'law to apply'").

13

Here, there is no statute that curtails or otherwise governs the President's

discretion to issue presidential permits.[6] Not even the EIS requirement of NEPA applies

to the President. *See Tulare County*, 185 F. Supp. 2d at 28 (stating that the President is

not subject to NEPA's impact statement requirement because "the President is not a

federal agency for the purposes of NEPA"). The President acts solely by his own

constitutional authority. Judicial review of permitting decisions that the President has

delegated to the State Department would impose an unconstitutional burden on his power

to delegate that the APA does not require, let alone contemplate. To treat those decisions

as agency action "would suggest the absurd notion that all presidential actions must be

carried out by the President him or herself in order to receive the deference Congress has

chosen to give to presidential action." *Id.* at 28-29. Worse yet, the NRDC's position, if

the Court were to accept it, would create an asymmetry between presidential permits that

are reviewed by the President because of interagency disagreement and those that are

issued solely by the State Department. This outcome would surely frustrate the

President's discretion to enact his preferred decision-making process. Thus, "[o]ut of

respect for the separation of powers and the unique constitutional position of the

President," it is proper in this case to forego APA review of permitting decisions under

Executive Order 13,337, whether by the President or by the State Department acting on

---

[6] In this respect, this case is unlike *Corus Group PLC v. Int'l Trade Comm'n*, a case the NRDC cited, which applied *Bennett* instead of *Franklin* and *Dalton* because the President did "not have complete discretion under the [relevant enabling] statute." 352 F.3d 1351, 1359 (Fed. Cir. 2003).

his behalf, absent "an express statement by Congress" that such review is intended.[7]

*Franklin*, 505 U.S. at 800-01.

Simply stated, an act need not be carried out by the President personally to constitute presidential action exempt from judicial review under the APA. Where, as here, the President (as opposed to Congress) delegates his inherent constitutional authority to a subordinate agency and that authority is not limited or otherwise governed

---

[7] Generally, judicial review of agency action is presumed and cannot be withheld "absent some clear and convincing evidence of legislative intention to preclude review." *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986). This presumption is reversed, however, when interests arising from the separation of powers are at stake. *See Franklin*, 505 U.S. at 801 ("As the APA does not expressly allow review of the President's actions, we must presume that his actions are not subject to its requirements."). In any event, there is good reason to think that Congress intended to exempt from judicial review presidential discretion of the kind at issue here, whether exercised by the President himself or by his delegee, because the APA is inapplicable where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see Jensen*, 512 F.2d at 1191 ("Since presidential action in the field of foreign affairs is committed to presidential discretion by law, it follows that the APA does not apply to the action of the Secretary in approving the regulation here challenged." (internal citations omitted)). Given that the authority to issue presidential permits flows from the President's inherent power over foreign affairs and is not governed or limited by any statute, there is little doubt that permitting decisions are committed to the President's (and hence his delegee's) discretion. The Court is mindful, of course, that presidential action is not beyond the reach of all judicial oversight. Actions of the President and his agents are still subject to non-statutory judicial review to determine the constitutionality of those actions, *see Franklin*, 505 U.S. at 801, or to determine whether those actions are *ultra vires*, *see Chamber of Commerce of the U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996). In this case, however, the crux of the NRDC's claim is that the State Department, acting on the President's behalf, abused its discretion by issuing a presidential permit based on a deficient EIS. (*See* Amend. Comp. [#21] at ¶ 64, 71). This type of challenge to presidential action does not warrant non-statutory judicial review. Where, as here, a specific decision is entrusted to the President and there are no discernible statutory limitations on the President's exercise of that authority, "judicial review of an abuse of discretion claim is not available." *Chamber of Commerce*, 74 F.3d at 1331.

by statute, the agency's exercise of that discretionary authority on behalf of the President is tantamount to presidential action and cannot be reviewed for abuse of discretion under the APA.  The President's authority to issue permits for cross-border pipelines is completely discretionary and is not subject to any statutory limitation, including NEPA's impact statement requirement.  Accordingly, the decision to issue a permit, whether made by the President himself or the State Department as the President's delegee, is a presidential action not reviewable for abuse of discretion.  Absent a right to judicial review, the NRDC cannot state a claim.  Accordingly, defendants' respective Motions to Dismiss are GRANTED, and an Order consistent therewith is hereby attached.


RICHARD J. LEON
United States District Judge

16